Arthur FREEMAN

v.

Stephen McKELLAR, Willie Mae James
Leake, William Koterba, William
Waldren and City of Chester.

Civ. A. No. 91–6146.

United States District Court,
E.D. Pennsylvania.

May 27, 1992.

Jon J. Auritt, Media, Pa., for plaintiff.

William F. Holsten, II, Media, Pa., for defendants.

## MEMORANDUM

WALDMAN, District Judge.

## BACKGROUND

Plaintiff filed this suit against the City of Chester ("the City") and various City officials pursuant to 42 U.S.C. § 1983, alleging that they violated his First and Fourteenth Amendment rights in retaliating against him for testimony he provided before a Delaware County grand jury. Plaintiff also asserts state law claims for wrongful discharge, defamation and violation of the Pennsylvania Whistleblower Act. Presently before the court is defendants' Motion to Dismiss Plaintiff's Complaint for failure to state a cognizable claim.

## I. STANDARD OF LAW

 In deciding defendants' motion to dismiss for failure to state a cognizable claim, the court must accept as true all of the plaintiff's factual allegations and draw from them all reasonably favorable inferences. *D.P. Enterprises, Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984). A case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistent with the plaintiff's allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

 A heightened standard of pleading is applicable to § 1983 claims for which a plaintiff must provide allegations sufficiently specific to provide a defendant with notice of the particular acts for which he may be held liable. *See Frazier v. Southeastern Pennsylvania Transportation Authority,* 785 F.2d 65, 67–68 (3d Cir.1986); *United States v. City of Philadelphia,* 644 F.2d 187, 204–05 (3d Cir.1980); *Rotolo v. Borough of Charleroi,* 532 F.2d 920, 922–23 (3d Cir.1976) *Quitmeyer v. Southeastern Pennsylvania Transportation Authority,* 740 F.Supp. 363, 366 (E.D.Pa. 1990).

## FACTS

Viewed in the light most favorable to plaintiff, the pertinent facts are as follow. Plaintiff is, and between April 1990 and June 1991 was, a per diem employee for the Department of Parks, Public Property and Recreation of the City of Chester ("the Department"). Defendant McKellar was a City Councilman and the director of the Department. Between February and May 1991, McKellar ordered plaintiff and a co-worker to remodel his home on City time with materials which were the property of the City.

Plaintiff and his co-worker complained to their supervisor about having to perform this work, but were instructed to obey McKellar's directions. In May 1991, Delaware County authorities began an investigation into possible misuse of City funds. One aspect of the investigation centered on the remodelling of McKellar's home. On May 6, 1991, plaintiff and his co-worker received subpoenas to appear before a Delaware County grand jury on June 6, 1991.

McKellar contacted plaintiff a few days before he was to testify and told him that McKellar had obtained an attorney to represent plaintiff before the grand jury. McKellar then accompanied plaintiff to consult with that attorney. At that meeting, McKellar threatened plaintiff with the loss of his job if he were to tell the grand jury about the renovations performed or the misuse of City materials. Plaintiff's co-worker had been fired two days earlier when he refused the services of the attorney McKellar had obtained for him and agreed to cooperate with the authorities. McKellar offered to reward plaintiff with a full-time City position with increased pay and benefits if he would agree to place blame for the misappropriation of City property upon his co-worker.

Defendant was not called before the grand jury on June 6, 1991, but received another subpoena to testify on June 27, 1991. McKellar visited plaintiff in the interim and sought to ensure that he would help exonerate McKellar. On June 27, 1991, plaintiff truthfully testified before the grand jury. Immediately before doing

so, plaintiff informed the lawyer whom McKellar had retained that his services were not needed as plaintiff had hired other counsel to represent him.

On June 28, 1991, plaintiff received a letter from McKellar on Department stationery stating that plaintiff was terminated for admitting to the theft of City property. By letter on July 3, 1991, again with an official Department letterhead, McKellar advised plaintiff that only City Council had authority to dismiss employees and thus he was not in fact discharged but was suspended without pay. The same day, a member of the City Council presented a motion to reinstate plaintiff and his co-worker until the ongoing investigation of the misuse of public property was complete. Defendant Council members Koterba, Waldren, Leake and McKellar declined to second the motion and thus it was not acted upon.

On July 3, 1991, McKellar made a public statement that plaintiff had been terminated for "stealing" City property and would "continue to steal" if reinstated, and on July 20, 1992 that plaintiff was a "career criminal." On July 18, 1991, the grand jury recommended the filing of criminal charges against McKellar. On August 26, 1991, after McKellar was replaced as Department director, plaintiff was reinstated as an active employee.

In Counts I and VIII respectively, plaintiff asserts a § 1983 claim against McKellar and the City for violating his First and Fourteenth Amendment rights. In counts II, III and IV, plaintiff asserts claims against McKellar for violating the Pennsylvania Whistleblower law, wrongful discharge and defamation. In Counts V through VII, plaintiff alleges that defendants Leake, Koterba and Waldren violated plaintiff's constitutional rights and the state whistleblower law, and wrongfully discharged him.[1]

1. Plaintiff agrees that Count IX, asserting a claim against the City for violating the Pennsylvania Whistleblower law, should be dismissed.

## DISCUSSION

### A. Count I

To state a cognizable § 1983 claim, a plaintiff must allege that he was deprived of a federally secured right by a defendant acting under color of state law. *See Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978). As an official of the City of Chester, McKellar's purported termination and subsequent suspension of plaintiff were acts under color of state law. McKellar's fellow councilmen also were state actors. Plaintiff alleges that he has been deprived of a liberty right under the Fourteenth Amendment and a First Amendment right.[2]

### 1. Plaintiff's Liberty Interest

A government employee's liberty interest is implicated when he has been terminated and the government has made "a charge against him that might seriously damage his standing and associations in the community" or "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972).

In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, *reh'g denied,* 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976), the Supreme Court made clear that a reputational injury *alone* is not cognizable under § 1983. *Id.* 424 U.S. at 709–12, 96 S.Ct. at 1164–65. Rather, a reputational injury must coincide with an alteration or extinguishment of a right or status recognized by state law to be cognizable under § 1983. *Id.* at 711, 96 S.Ct. at 1165. Construing *Roth,* the Court stated:

While *Roth* recognized that governmental action defaming an individual in the course of declining to rehire him could entitle a person to notice and an opportunity to be heard as to the defamation, its

2. Plaintiff does not allege the existence of a property right and in his response to defendants' present motion acknowledges that he did not have a property interest in his position as a per diem employee with the City.

language is quite inconsistent with any notion that a defamation perpetrated by a government official but unconnected with any refusal to rehire would be actionable under the Fourteenth Amendment. . . .

*Id.* 424 U.S. at 709, 96 S.Ct. at 1164.

■ A public employee who has been dismissed has a cognizable liberty interest under § 1983 when the dismissal is based upon charges which stigmatize the employee and "the employer creates and disseminates a defamatory impression about the employee in connection with the termination." *Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1978) (per curiam); *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Brennan v. Hendrigan,* 888 F.2d 189, 196 (1st Cir.1989); *Rosenstein v. City of Dallas,* 876 F.2d 392, 396 (5th Cir.), *reh'g granted,* 884 F.2d 174 (5th Cir.1989), *reinstated in part,* 901 F.2d 61 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 153, 112 L.Ed.2d 119 (1990);[3] *Doe v. Department of Justice,* 753 F.2d 1092, 1111 (D.C.Cir. 1985). The defamation must occur in the course of terminating the individual's employment. *See Davis,* 424 U.S. at 710, 96 S.Ct. at 1164; *Roth,* 408 U.S. at 573–74, 92 S.Ct. at 2707; *Brennan,* 888 F.2d at 196.[4]

■ When a public employer has impugned an employee by defamatory remarks in the course of a termination, due process requires that the employer provide a "name-clearing" hearing. *See Codd,* 429 U.S. at 627, 97 S.Ct. at 884; *Davis,* 424 U.S. at 709, 96 S.Ct. at 1164; *Roth,* 408 U.S. 564, 573 n. 12, 92 S.Ct. 2701, 2707 n. 12 (1972).[5] It is the failure of a public employer to provide a name clearing hearing that

is an affront to the employee's due process rights. *Codd,* 429 U.S. at 628, 97 S.Ct. at 884; *Davis,* 424 U.S. at 710, 96 S.Ct. at 1164; *Brennan,* 888 F.2d at 196. Thus, where due process has been denied, the appropriate remedy is to afford an aggrieved employee a "name-clearing" hearing. *See Codd,* 429 U.S. at 629, 97 S.Ct. at 885 ("[T]he remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge.'") (quoting *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707); *Doe,* 753 F.2d at 1102–03 (citing cases).

■ Plaintiff variously alleges that he was terminated and suspended without pay. The most logical inference from the complaint as a whole, including the attachments incorporated therein, is that plaintiff was suspended for 58 days after initially being misinformed that he had been terminated. Courts have held that an employee must be discharged to maintain a § 1983 action for a liberty deprivation. *See Johnson v. Morris,* 903 F.2d 996, 999 (4th Cir. 1990) (demotion does not constitute sufficient alteration of status); *Hershinow v. Bonamarte,* 735 F.2d 264, 266 (7th Cir. 1984) (suspended employee cannot sustain § 1983 liberty claim); *Mosrie v. Barry,* 718 F.2d 1151, 1161 (D.C.Cir.1983) (hearing not required when public employer defames employee who continues to be an employee); *Senegal v. Jefferson County,* 785 F.Supp. 86, 89 (E.D.Tex.1992) (dismissing liberty claim of at-will public employee suspended without pay for 40 days); *Schneeweis v. Jacobs,* 771 F.Supp. 733, 738 (E.D.Va.1991) ("A suspension does not give

**3.** After rehearing in *Rosenstein,* the Fifth Circuit reinstated its prior opinion with the exception of footnote 2 and its discussion of damages. In the initial and reinstated opinion, the Court states that "it is now beyond any doubt that discharge from public employment under circumstances that put the employee's reputation, honor or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment to a procedural opportunity to clear one's name." *Rosenstein,* 876 F.2d at 395.

**4.** In *Brennan,* the Court held that publication of defamatory information two months after plaintiff's discharge had not occurred in the course of termination. *Brennan,* 888 F.2d at 196. For purposes of this motion, the court will assume that at least the statement allegedly made by McKellar on July 3, 1991 was made sufficiently "in the course of" termination.

**5.** The truth of the material in question must be challenged or a name-clearing hearing would be without purpose. *Codd,* 429 U.S. at 627–28, 97 S.Ct. at 883–84.

rise to an employment interest under *Roth*.").

█ Moreover, even a discharged employee must allege that he timely requested a hearing to clear his name and that the request was denied. *See Howze v. City of Austin*, 917 F.2d 208 (5th Cir.1990) (reversing jury verdict in favor of city employee on § 1983 claim where plaintiff presented insufficient evidence that name clearing hearing had been requested); *Rosenstein*, 876 F.2d at 396. There is no allegation that plaintiff ever requested a hearing to refute the purportedly defamatory statement and clear his name. Having failed timely to seek such a hearing, plaintiff cannot successfully contend that he was denied due process.

Accordingly, the portion of the complaint that asserts a claim for deprivation of a liberty interest will be dismissed.

### 2. Plaintiff's First Amendment Right

█ A state may not condition public employment on a basis which infringes an employee's constitutionally protected interest in freedom of expression. *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983); *Zamboni v. Stamler*, 847 F.2d 73, 77 (3d Cir.), *cert. denied*, 488 U.S. 899, 109 S.Ct. 245, 102 L.Ed.2d 233 (1988). A public employer cannot take adverse employment action against an employee who engages in constitutionally protected speech when the exercise of that right is a substantial or motivating factor behind such action, unless the employer can demonstrate that the same action would have been taken in the absence of such protected conduct. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1200 (3d Cir.1988); *Czurlanis v. Albanese*, 721 F.2d 98, 103 (3d Cir.1983). A public employer, however, may have a legitimate interest in regulating its employees' speech. A court must therefore balance the interest of an employee in commenting upon a matter of public concern and the State's interest in promoting the efficient performance of its public services. *Zamboni*, 847 F.2d at 77; *Rode*, 845 F.2d at 1201.

To determine the character of an employee's speech, the court must examine the content, form and context of his statements to assess whether the matter in question may "fairly [be] characterized as constituting speech on a matter of public concern...." *Connick*, 461 U.S. at 146–48, 103 S.Ct. at 1690. A public employee's sworn testimony before an adjudicatory body has been held to be inherently a matter of public concern and protected by the First Amendment. *See, e.g., Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1578 (5th Cir.1989) (testimony before official fact-finding body); *Reeves v. Claiborne County Bd. of Educ.*, 828 F.2d 1096, 1100 (5th Cir.1987) (testimony at trial); *Neubauer v. City of McAllen*, 766 F.2d 1567, 1572 n. 5 (5th Cir.1985) (furnishing of truthful information to grand jury protected by First Amendment); *Smith v. Hightower*, 693 F.2d 359, 368 (5th Cir.1982) ("[T]he first amendment protects the right to testify truthfully at trial."). *See also Hoopes v. Nacrelli*, 512 F.Supp. 363, 364 (E.D.Pa.1981) ("With respect to [plaintiff's] First Amendment claim, there is no question that his testimony at trial did constitute constitutionally protected speech."); *Hirsch v. Green*, 368 F.Supp. 1061, 1067 (D.Md.1973) (public employee states § 1983 claim when alleging discharge after providing grand jury testimony).

"The goal of grand jury proceedings, of criminal trials, and of civil trials is to resolve a dispute by gathering the facts and arriving at the truth, a goal sufficiently important to render testimony in these contexts speech 'of public concern.'" *Johnston*, 869 F.2d at 1578. As the Court in *Johnston* noted, the integrity of the judicial process would be compromised if retaliation were allowed for testimony damaging to a state official and that such could "scuttle our efforts to arrive at the truth." *Id.*

█ The court perceives no legitimate state interest on the facts alleged or under any circumstances to justify action by the state as an employer to prevent an employee subpoenaed to a grand jury from appearing and testifying truthfully about knowledge he has of possible criminal wrongdoing. Plaintiff alleges that defendant McKellar, knowing that plaintiff had been subpoenaed to testify before a grand

jury investigating official misconduct, actively attempted to influence his testimony by threats and thereafter as a City department director retaliated against him for testifying truthfully. The court finds that plaintiff adequately has stated a § 1983 claim against McKellar for a violation of his First Amendment rights.

### B. Counts V and VIII

Plaintiff alleges that by refusing to second a motion to reinstate him defendants Leake, Koterba and Waldren perpetuated plaintiff's suspension and that they and the City thereby violated his First and Fourteenth Amendment rights.[6]

 There is no respondeat superior liability under § 1983. *See Monell v. New York City Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), *Rode,* 845 F.2d at 1207. The defendant councilmen, however, may be liable if they personally effected or knowingly acquiesced in an adverse employment action against plaintiff in retaliation for his engaging in protected speech. *See Rizzo v. Goode,* 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976); *Rode,* 845 F.2d at 1208.

 Defendant councilmen contend that they have absolute immunity because the act complained of was undertaken "within the scope of their legislative duties." Members of a municipal council are absolutely immune from § 1983 liability for acts taken in a legislative capacity. *Aitchison v. Raffiani,* 708 F.2d 96, 99 (3d Cir.1983). That the act in question involved a vote by members of a governing municipal body, however, does not alone make that act legislative in nature. *See Abraham v. Pekarski,* 728 F.2d 167, 174 (3d Cir.), *cert. denied,* 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984). *See also Ryan v. Burlington County,* 889 F.2d 1286, 1290 (3d Cir.1989). Municipal employment decisions are administrative in nature and this does not change merely because a legislative body or council is the decision maker under a particular governmental scheme. *Detz v. Hoover,* 539 F.Supp. 532, 534 (E.D.Pa.1982). The act complained of in the instant case affected a single individual and clearly fell within the scope of the Council's administrative duties.

 The City also may be liable under § 1983 for a policy of deliberate indifference to a violation of constitutional rights by persons under its jurisdiction. *See City of Canton v. Harris,* 489 U.S. 378, 390–91, 109 S.Ct. 1197, 1205–06, 103 L.Ed.2d 412 (1989); *Stoneking v. Bradford Area School Dist.,* 882 F.2d 720, 725 (3d Cir.1989), *cert. denied.* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990). A single action by municipal officials may constitute a "policy" if they have final discretionary authority to act with regard to the subject matter in question and deliberately choose a particular course of action from among various available options. *See Pembauer v. Cincinnati,* 475 U.S. 469, 481–84, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452 (1986); *Bello v. Walker,* 840 F.2d 1124, 1129–30 n. 4 (3d Cir.1988). *See also Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir.1990).

 Thus, the City may be liable if the Council indeed had final decision making authority to reinstate plaintiff and knowing that he had been removed in retaliation for exercising a constitutional right, deliberately chose to ratify or perpetuate this abuse. *See Ware v. Unified School Dist. No. 492,* 902 F.2d 815, 819–20 (10th Cir.1990) (plaintiff asserts viable claim against school board for deliberate indifference in ratifying superintendent's decision not to renew her employment contract in retaliation for her exercise of First Amendment right).

### C. State Law Claims

#### 1. *Pennsylvania Whistleblower Act*

In counts II and VI, plaintiff alleges respectively that defendant McKellar and defendants Leake, Koterba and Waldren

---

6. Plaintiff does not allege that these defendants defamed him or refused a timely request by him for a name clearing hearing. Thus, the Four- teenth Amendment is implicated only to the extent that it makes applicable to the states the restrictions embodied in the First Amendment.

violated the Pennsylvania Whistleblower Act, 43 Pa.Stat.Ann. § 1421 *et seq.* In pertinent part, the statute provides:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

43 Pa.Stat.Ann. § 1423(a)–(b).

The complaint was filed within 180 days of the alleged violation and thus the Whistleblower claim is timely. *See* 43 Pa.Stat. Ann. § 1424(a). The term "employer" encompasses persons in the line of supervision of an aggrieved employee as well as agents of public bodies which include city councils and departments. *See* 43 Pa.Stat. Ann. § 1422.

■ Defendants argue that this claim should be dismissed because plaintiff was removed for legitimate reasons. The statute provides for such a defense. *See* 43 Pa.Stat.Ann. § 1424(c). Under this subsection, however, an employer must prove by a preponderance of the evidence that action was taken against the employee for legitimate reasons separate from the protected conduct to sustain the defense. From the complaint it may be inferred that plaintiff knowingly participated in a scheme to misappropriate and misuse public property. That he did so at the behest of a superior might be a mitigating circumstance but would not immunize him from a charge of wrongdoing. Consistent with plaintiff's allegations and particularly in view of his reinstatement, however, one reasonably could infer that the employers' motives in the instant case were retaliatory and that plaintiff was removed for testifying and not for any misuse of public property. Thus, this defense cannot be sustained on a motion to dismiss.

■ Defendant McKellar also claims that he is entitled to official immunity under 42 Pa.Cons.Stat.Ann. § 8546. Similarly, this claim cannot be resolved on a motion to dismiss. Official immunity is unavailable to a local agency employee for malicious acts or acts which constitute misconduct. *See* 42 Pa.Cons.Stat.Ann. § 8550. Because it reasonably can be inferred from the complaint that McKellar acted with actual malice to penalize plaintiff for engaging in protected speech, the motion to dismiss this claim on the basis of immunity cannot be granted. *See Agresta v. City of Philadelphia,* 694 F.Supp. 117, 124 (E.D.Pa.1988).

### 2. Wrongful Discharge

Plaintiff alleges in Counts III and VII respectively that he was wrongfully discharged by defendant McKellar and by defendants Leake, Koterba and Waldren.

■ Under Pennsylvania law, an at-will employee may have an action for wrongful discharge if he was terminated in violation of a significant, clearly mandated public policy. *See Geary v. United States Steel Corp.,* 456 Pa. 171, 178–85, 319 A.2d 174 (1974); *Yetter v. Ward Trucking Corp.,* 401 Pa.Super. 467, 473–74, 585 A.2d 1022 (1990), *appeal denied,* 600 A.2d 539 (1991). This is an exception to the general rule that employers may terminate at-will employees at any time for any reason, and is very narrowly construed. *Bruffett v. Warner Communications, Inc.,* 692 F.2d 910, 918 (3d Cir.1982); *Durham v. Fleming Companies, Inc.,* 727 F.Supp. 179, 182–83 (E.D.Pa. 1989), *aff'd,* 897 F.2d 521 (3d Cir.1990); *Paul v. Lankenau Hospital,* 524 Pa. 90, 95, 569 A.2d 346 (1990); *Burkholder v. Hutchison,* 403 Pa.Super. 498, 502, 589 A.2d 721 (1991).

Plaintiff asserts that defendants "violated a clear mandate of public policy" that "employees such as Plaintiff who testify truthfully before Grand Juries are entitled to protection from reprisal and retaliation from their employers." Plaintiff cites no source for this expression of public policy. It appears, however, that 18 Pa.Con. Stat.Ann. § 4902(a) which prohibits perjury before a grand jury, § 4952(a) which prohibits efforts to intimidate a witness to give false testimony and § 4953(a) which prohibits retaliation against witnesses reflect a sufficiently clear and significant public policy against deterring persons from providing truthful testimony and information about criminal wrongdoing to trigger the narrow exception to the employment at-will doctrine. Because this case involves a *public* employer,[7] the First Amendment also provides a source of public policy which is implicated by an unjustified act of retaliation against an employee for engaging in protected speech.

As noted it is not clear whether plaintiff, viewing his allegations as a whole, claims to have been discharged or merely suspended. Arguably, an at-will employee who has been suspended without pay for an open-ended period effectively has been discharged. To find otherwise might permit employers to evade claims for wrongful discharge in violation of our most important and fundamental public policies by characterizing their actions as "suspensions" and then perpetuating them indefinitely. For purposes of this motion, the court finds that plaintiff adequately has alleged facts from which it might be found that he was discharged and then rehired, rather than suspended and reinstated.

A cause of action for wrongful discharge, however, may be maintained only in the absence of a statutory remedy for an aggrieved employee. *See Novosel v. Nationwide Ins. Co.,* 721 F.2d 894, 899 (3d Cir.1983); *Rettinger v. American Can Co.,* 574 F.Supp. 306, 311 (M.D.Pa.1983); *Wehr v. Burroughs Corp.,* 438 F.Supp. 1052, 1055–56 (E.D.Pa.1977); *Macken v. Lord Corp.,* 402 Pa.Super 1, 4, 585 A.2d 1106

(1991); *Darlington v. General Electric,* 350 Pa.Super. 183, 208, 504 A.2d 306 (1986). On the facts alleged, plaintiff has an appropriate statutory remedy under the Whistleblower Act. The legislature clearly appears to have enacted that law precisely to protect the interest of employees and society in circumstances such as those alleged by plaintiff. *See Wehr,* 438 F.Supp. at 1055. Accordingly, the court will dismiss Counts III and VII.

### 3. Defamation Claim against McKellar

Count IV of the complaint alleges that McKellar defamed plaintiff by making and causing to be published materially false statements about him to others between July 3, 1991 and July 20, 1991. These allegedly include statements that plaintiff stole City funds and materials; is a convicted thief; is a career criminal; and, would steal again if reinstated.

Pennsylvania has codified the elements of a defamation action. *See* 42 Pa.Cons. Stat.Ann. § 8343. A plaintiff must prove:

(1) the defamatory character of the communication by defendant;

(2) defendant published the communication;

(3) it applied to plaintiff;

(4) recipient(s) understood the defamatory meaning;

(5) the understanding was as it was intended to be with respect to the plaintiff;

(6) special harm resulted to plaintiff from its publication; and (where applicable),

(7) there was abuse of a conditionally privileged occasion.

The alleged statements by defendant concerning plaintiff clearly are capable of defamatory meaning. Defendant contends, however, that plaintiff has not stated a claim because he has not alleged special damages. Although plaintiff does not utilize the precise words, he does allege that as a proximate result of the defamation he suffered, *inter alia,* loss of earnings and

---

**7.** *See Borse v. Piece Goods Shops, Inc.,* 963 F.2d 611, 618 (3d Cir.1992).

earnings capacity. Special damages are the "actual and concrete damages capable of being estimated in money...." *Clemente v. Espinosa,* 749 F.Supp. 672, 677 (E.D.Pa.1990). Moreover, the statements allegedly made by McKellar are slanderous *per se.* If proven, special damages are not required. *Id.*[8]

Accordingly, plaintiff's defamation claim will not be dismissed.

An appropriate Order will be entered consistent with the foregoing.

### ORDER

AND NOW, this 27th day of May, 1992, upon consideration of defendants' Motion to Dismiss and plaintiff's response thereto, consistent with the accompanying memorandum, IT IS HEREBY ORDERED that said Motion is GRANTED in part and DENIED in part, in that the portion of Count I alleging a deprivation of liberty without due Process, Count III, Count VII and Count IX of plaintiff's complaint are DISMISSED and the motion otherwise is DENIED.

---

**8.** Words that impute criminal conduct are one of the four recognized categories of slander *per* *se. Id.* (citing Restatement (Second) of Torts § 570 (1977)).