Terrance O'CONNELL, Plaintiff,

v.

COUNTY OF NORTHAMPTON,
et al., Defendants.

No. CIV. A. 98–6742.

United States District Court,
E.D. Pennsylvania.

Dec. 20, 1999.

Terrance O'Connell, New City, NY, Pro se.

William P. Leeson, Leeson, Leeson & Leeson, Bethlehem, Douglas J. Smillie, Fitzpatrick, Lentz and Bubba, Center Valley, Malcolm J. Gross, Gross, McGinley, LaBarre & Eaton, Allentown, PA, for County of Northhampton, A.L. Brackbill, Jr., County Executive, Frank Billota, County Administrator, Michael Buffer, Reporter, the Express Times, Matt Assad, Reporter, the Morning Call, Jose Garcia, Correction Officer, Personally, Donald Wenner, Correction Officer, Personally, Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Pro se[1] plaintiff Terrance O'Connell, former Warden of the Northampton County Prison, brought this action claiming that certain of the named defendants violated his civil rights pursuant to 42 U.S.C. § 1983 and that all defendants defamed him in violation of Pennsylvania state law.[2] The named defendants include Northampton County, A.L. Brackbill Jr.—County Executive, Frank Billota—County Administrator, Correction Officer Jose Garcia, Correction Officer Donald Wenner (collectively the "County defendants"), and Michael Buffer, a reporter for The Express Times. Plaintiff's claims are based on the events surrounding his resignation from employment as Warden of the Northampton County Prison in March of 1997.

Presently before the court are the County defendants' and defendant Buffer's motions for summary judgment and plaintiff's responses/cross-motions.[3] The court will

---

[1]. Although he is proceeding pro se, plaintiff has acknowledged that he is an attorney licensed to practice in New York, Pennsylvania and New Jersey. Accordingly, the teachings of the United States Supreme Court in *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), as they relate to the treatment of pleadings submitted by pro se plaintiffs, are inapplicable to the instant case.

[2]. In response to this court's Order of May, 27, 1999, plaintiff served an amended complaint on the named parties but failed to file the amended complaint with the court. To correct plaintiff's oversight, this court subsequently ordered plaintiff's complaint to be filed. *See* doc. # 30. Plaintiff's amended complaint is even less clear than his original complaint. For example, plaintiff's amended complaint contains a count II (defamation claim) but no count I. In addition, in what the court has construed to be count I, plaintiff appears to be claiming that various individuals—other than defendants Brackbill and Billota—who comprised a committee which had convened while he was Warden to investigate certain alleged improprieties in his prison administration also violated his civil rights through their reported findings. *See* Pl.'s Am. Compl. at ¶¶ 11–13. As these "defendants" were never sued and therefore are not parties to this action, to the extent they made any allegedly defamatory comments, such conduct cannot be the basis for liability in this action. Finally, the court notes that plaintiff is not asserting any constitutional claim against defendant Buffer. *See* Pl.'s Am. Compl.

[3]. Plaintiff has filed two responses to the defendants' motions for summary judgment, which he has entitled "Memorandum in Answer to Motion for Summary Judgment [sic] by County of Northampton, A.L. Brackbill, Frank Billota, Joe Garcia and Donal Wenner and Cross Motion for Summary Judgment in Favor of Plaintiff Terrance O'Connell" (doc. # 28) [hereinafter "Pl.'s Resp. to County Defs.' Mot. for Summ. J."] and "Memoran-

grant the County defendants' motion for summary judgment and deny plaintiff's cross-motion against the County defendants for the following reasons: (1) plaintiff has no claim that any property interest protected by the Due Process Clause was violated by the County defendants because plaintiff's resignation was voluntary and not the result of coercion or duress; (2) plaintiff has no claim that any liberty interest protected by the Due Process Clause was violated by these defendants because plaintiff failed to request a "name-clearing" hearing; and (3) plaintiff has failed to produce any evidence that the named County defendants actually made any allegedly defamatory statements. In addition, the court will grant defendant Buffer's motion for summary judgment and deny plaintiff's cross-motion against defendant Buffer because defendant Buffer's articles are protected by the fair report privilege.

## I. FACTS

The following material facts are uncontested and all reasonable inferences have been drawn in plaintiff's favor. Plaintiff was hired as Warden of the Northampton County Prison in February of 1996. *See* Ex. A to Def. Buffer's Mot. for Summ. J. at 43 (Transcript of Plaintiff's Deposition) [hereinafter "Pl.'s Dep."].[4] In March of 1997, plaintiff met with defendants Brackbill and Billota to discuss allegations that

had been made by a female correction officer against plaintiff. *See* Pl.'s Dep. at 45–49. Specifically, Brackbill and Billota informed plaintiff that a correction officer had claimed that plaintiff had sexually harassed her by making unsolicited phone calls to her residence. *Id.* at 47–49. Plaintiff strenuously denied sexually harassing the correction officer and claimed that he had no recollection of ever phoning her residence. *Id.* at 49–52. Despite plaintiff's denials, Brackbill and Billota asked plaintiff to resign as Warden—an action plaintiff refused to take. *Id.* at 61. Plaintiff then left the meeting. *Id.* At no time during or after that meeting did defendants Brackbill or Billota ever threaten plaintiff with discharge if he failed to resign. *Id.* 70, 72, 88–90, 127.

A few days following the meeting, plaintiff submitted a letter of resignation, which set the effective date of his resignation as the last Friday in March. *Id.* at 43, 62, 72, 126. Almost nine months after plaintiff resigned, various articles written by defendant Buffer appeared in a local newspaper, The Express Times, chronicling the happenings at the prison, including references to plaintiff's resignation and several other allegedly improper acts committed during plaintiff's prison administration.[5] *Id.* at 71, 77–80, 94, 99–100.

Plaintiff instituted this suit, claiming that by accusing him of improper conduct

dum in Answer to Motion for Summary Judgment [sic] by Defendant Michael Buffer and Cross Motion for Summary Judgmemt [sic] in Favor of Plaintiff Terrance O'Connell." (doc. #27) [hereinafter "Pl.'s Resp. to Buffer's Mot. for Summ. J."].

**4.** In support of their motion for summary judgment, the County defendants rely on the exhibits attached to defendant Buffer's motion. Of note, in violation of the mandate of Federal Rule of Civil Procedure 56, plaintiff has not attached any evidence in the form of affidavits, deposition testimony, or interrogatory answers to his responses/cross-motions for summary judgment and simply makes only one reference in each of his opposition briefs to a single page of his deposition transcript, citations that are unhelpful to his posi-

tion. *See* Pl.'s Resp. to County Defs.' Mot. for Summ. J. at 2; Pl.'s Resp. to Buffer's Mot. for Summ. J. at 2.

**5.** As referred to above, during plaintiff's employment as Warden, an investigative committee was formed to review the facts surrounding an allegation that one of the prison's newly appointed supervisors, a supervisor appointed by plaintiff, had made discriminatory remarks. Later, the committee added to its investigation a review of the facts surrounding the treatment of several prisoners. The committee, of which plaintiff was originally a member and then either was removed from or abdicated his committee position on his own accord, issued its report on December 16, 1997. The articles relate to the committee's findings.

and by effectively forcing him to resign without holding a hearing, the County defendants violated his due process rights under the Fourteenth Amendment and that they, along with defendant Buffer, defamed him.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In addition, the court must accept the non-movant's version of the facts as true and resolve conflicts in the non-movant's favor. *See Big Apple BMW, Inc. v. BMW of N. America, Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Speculation, conclusory allegations, and

mere denials are insufficient to raise genuine issues of material fact. To defeat "a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor." *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).

## III. DISCUSSION

### A. *Plaintiff's Federal Claims.*

To establish a claim under 42 U.S.C. § 1983, a plaintiff must show that a person acting under color of state law deprived him of a right secured by the Constitution or the laws of the United States.[6] *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir.1995). The essence of plaintiff's poorly articulated § 1983 claim appears to be that by confronting plaintiff with the allegations of the female correction officer and asking for his resignation without offering to hold a hearing, the County defendants constructively discharged him in violation of his Fourteenth Amendment due process property interest.[7] *See* Pl.'s Am. Compl. at ¶ 10; *see also* Pl.'s Resp. to County Defs.' Mot. for Summ. J. at 1–3. In addition, plaintiff appears to be arguing that his due process liberty interest was also violated by statements made to the press and others by the County defendants concerning his resignation and the accusations of the female correction officer that plaintiff had sexually harassed her. *See* Pl.'s Dep. at 132.

### 1. *Plaintiff's due process property interest.*

An employee's resignation from public employment is presumed to be vol-

---

**6.** The statute provides in relevant part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to

the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   42 U.S.C. § 1983.

**7.** This amendment provides in pertinent part that no state "shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

untary. *Leheny v. City of Pittsburgh,* 183 F.3d 220, 227 (3d Cir.1999). The Third Circuit in *Leheny* explained:

> This presumption remains intact until the employee presents evidence to establish that the resignation ... was involuntarily procured. If an employee retires [or resigns] of his own free will, *even though prompted to do so by some action of his employer,* he is deemed to have relinquished his property interest in his continued employment for the government, and cannot contend that he was deprived of his due process rights.

*Id.* (emphasis added) (internal citations omitted). An employee's resignation will be considered involuntary if: (1) the employer forces the resignation by using coercion or duress, or (2) the employee resigned because the employer deceived or misrepresented a material fact to the employee. *Id.* (citing *Hargray v. City of Hallandale,* 57 F.3d 1560, 1568 (11th Cir. 1995)). To determine whether the resignation is involuntary, the court must look at all the circumstances surrounding plaintiff's resignation.

Here, plaintiff has made no recognizable allegation and has introduced no evidence that the County defendants deceived or misrepresented a material fact to him. Rather, plaintiff claims that the conduct of defendants Brackbill and Billota at the meeting where they requested his resignation amounted to coercion or duress.

■ In determining whether a resignation was involuntary due to coercion or duress, the court may consider the following factors: (1) whether the employee was presented with an alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee had a reasonable time to choose; (4) whether the employee was permitted to select the effective date of resignation; and (5) whether the em-

ployee had the advice of counsel. *Hargray v. City of Hallandale,* 57 F.3d 1560, 1568 (11th Cir.1995). Plaintiff's own deposition testimony conclusively shows that none of these factors, when considered, weighs in his favor.

■ In the instant case, plaintiff—a lawyer both then and at the present time—was not put to a choice to either resign or face discharge. In fact, when asked to resign by defendants Brackbill and Billota at the meeting, plaintiff refused and only resigned some time later, and then for a variety of reasons beyond the accusations of sexual harassment lodged by the correction officer. Further, plaintiff selected his own date of resignation.

Indeed, a review of plaintiff's own deposition testimony leaves no doubt that plaintiff resigned on his own and not because he was asked to do so by defendants Brackbill and Billota. *See* Pl.'s Dep. at 42, 61, 69, 72. At his deposition, plaintiff stated that his mindset when he left that office after the meeting was that "if they want to get rid of me, let them fire me." *See* Pl.'s Dep. at 133. Further, plaintiff acknowledged during his deposition that when he left the meeting with defendants Brackbill and Billota, (1) he did not believe that the defendants had given him an ultimatum—in other words, that he would be fired if he did not resign, (2) he did not recall that they told him they were awaiting a different decision, and (3) they did not again ask for his resignation. *See id.* at 70, 72, 88–90, 127. In addition, plaintiff admitted that he submitted a resignation letter several days after the meeting with defendants Billota and Brackbill, after he had some time to think about it.[8] *See id.* at 62, 72, 126.

More importantly, plaintiff's articulated reasons for changing his mind and resigning from his position as Warden simply do

---

8. For some unknown reason, the County defendants failed to make part of the record plaintiff's resignation letter, a piece of evidence that would seemingly help their argu-

ment. Plaintiff does not dispute, however, that he submitted the letter and that the letter expresses his intention to resign.

not support his claim that he was coerced or forced to do so under duress. For example, plaintiff was questioned numerous times throughout the course of his deposition as to the reasons surrounding his resignation:

Q. Why did you resign from the position as Warden for Northampton County Prison?

A. Well, the relationship between myself and Mr. Billota and Mr. Brackbill had gotten a little bit hostile because of some accusations they made which were completely untrue, and number two I was having trouble with my son at home, and my being away from home really didn't help his situation. . . .

Pl.'s Dep. at 41–42.

. . . .

A. And Mr. Brackbill had asked me to resign because of some accusations that were made and I refused. That was either a Thursday or a Friday. And I finally decided, because of all—. You know, I was having problems at home and, you know, I wanted to get home to face these problems a little bit more directly, and I couldn't do it by staying in Easton.

*Id.* at 42–43.

. . . .

A. And another reason I resigned, I wasn't having—. I wanted to move down here into the County, but I was having absolutely no success selling my house. . . .

*Id.* at 43.

. . . .

Q. What changed your mind?

A. Well, it had gotten into the Press and there was, you know, a lot of talk in the Press, and it was roaming around the prison. Of course, the Northampton County Jail, as most jails, there's no way you can keep a

secret, and I just, you know, in view of some of the problems we were having at home and the fact that my wife wanted me to—at this point she changed her mind about selling the house, because we had been so unsuccessful, and she wanted me home and so I figured, you know, in view of all the nonsense, if you want to call it that, going on, I figured I might as well go because I really felt that my effectiveness as a Warden there was going to be tremendously compromised by this situation [involving the female correction officer] whether it was true or not.

*Id.* at 71–72.

. . . .

A. . . . The only thing that seems that you have a question in your mind is whether I resigned under pressure. Well, I can't say it wasn't under pressure, because I was given pressure, but not pressure directly from Brackbill. There were other things that were pressuring me at the time. That's why I said . . . the hell with them, why should I bother with these people anymore?

Q. So you really didn't resign in response to Brackbill and Billota's request but rather you resigned from an accumulation of circumstances—.

A. Yes.

Q. —that caused you in your own mind to form your own decision of your own volition.

A. Yes.

*Id.* at 137–138.

Based on the above-identified deposition testimony, it is clear, under the totality of the circumstances, that plaintiff's resignation was voluntary, even if prompted by some action of the County defendants, and not the result of duress or coercion imposed by the County defendants.[9] *See*

9. Moreover, "to succeed on a claim of deprivation of due process under the Fourteenth Amendment with respect to termination of a specific employment position, a plaintiff must

*Leheny*, 183 F.3d at 227; *cf. Angarita v. St. Louis County*, 981 F.2d 1537, 1544–45 (8th Cir.1992) (finding employee police officers involuntarily resigned where, among other factors, employer did not let them leave room before signing resignation letter, requests to speak to supervisors were denied, and threats of disclosure to family members were made); *Paroczay v. Hodges*, 297 F.2d 439, 440–41 (D.C.Cir.1961) (finding employee's resignation to be involuntary where employee, who repeatedly asked to leave and consult with lawyer, was told to sign resignation letter before he left room or charges would be filed immediately). Accordingly, plaintiff's claim that his due process property interest has been violated fails as a matter of law.

### 2. *Plaintiff's due process liberty interest.*

■ The court next addresses what appears to be a claim by plaintiff that the County defendants deprived him of a liberty interest in having his name free of the stigma attached to the accusations of his alleged sexual harassment of a correction officer. Like his property interest claim, however, plaintiff's own voluntary resignation defeats this claim as well.

first establish a property interest in the employment." *Latessa v. New Jersey Racing Comm'n*, 113 F.3d 1313, 1318 (3d Cir.1997) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Here, plaintiff, as the non-moving party, has submitted no evidence whatsoever other than his own conclusory testimony, *see* Pl.'s Dep. at 88, that establishes a property right in his employment as Warden. *See Waters v. Churchill*, 511 U.S. 661, 679, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (finding that "an at-will employee ... generally has no claim based on the Constitution at all"); *Cooley v. Pennsylvania Hous. Fin. Agency*, 830 F.2d 469, 471 (3d Cir.1987) ("As a rule, public employees in Pennsylvania have at-will status and are subject to summary removal by the employing agency."), *abrogation on other grounds recognized by, Foster v. Chesapeake Ins. Co.* 933 F.2d 1207 (3d Cir. 1991). Even if plaintiff did possess a right to

■ A liberty interest of a government employee "is implicated when he has been terminated and the government has made 'a charge against him that might seriously damage his standing and associations in the community' or 'imposed upon him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.' " *Freeman v. McKellar*, 795 F.Supp. 733, 737 (E.D.Pa. 1992) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); *see also* Pl.'s Resp. to County Defs.' Mot. for Summ. J. at 3. The appropriate remedy in such a case is to provide the employee with what is known as a "name-clearing" hearing.[10] *See* 795 F.Supp. at 738. The court in *Freeman* explained, however, that a hearing of this type is available only "when the dismissal is based on charges which stigmatize the employee...." 795 F.Supp. at 738. In other words, the defaming remarks "must occur in the course of terminating the individual's employment." *Id.*

Here, plaintiff was requested to resign amid accusations of sexual misconduct, allegations he claims to be false. As shown above, plaintiff, however, refused to honor that request, and instead, continued his employment as Warden until he later chose to resign voluntarily. Accordingly,

continued employment and therefore a hearing, by voluntarily resigning, plaintiff effectively relinquished that right and any concomitant procedural protections. *See Boody v. Township of Cherry Hill*, 997 F.Supp. 562, 571 (D.N.J.1997) (finding that § 1983 plaintiff had not demonstrated that his resignation was involuntary).

10. A "name-clearing" hearing would effectively challenge the accusations made against plaintiff and is the appropriate due process remedy for a public employee aggrieved in such a manner. *See Freeman v. McKellar*, 795 F.Supp. 733, 738 & n. 5 (E.D.Pa.1992); *see also Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam) ("[T]he remedy mandated by the Due Process Clause of the Fourteenth Amendment is an opportunity to refute the charge.") (internal quotations omitted).

plaintiff was not terminated, and thus no liberty interest is implicated in the instant action.[11] *See id.* (citing cases where hearing not required when employee continues employment).

■ In addition, even if plaintiff had been effectively discharged, his failure to seek a "name-clearing" hearing would bar his claim. *Id.* at 739. "[E]ven a discharged employee must allege that he timely requested a hearing to clear his name and that the request was denied." *Id.; see also Hill v. City of Chester,* No. CIV.A.92–4357, 1994 WL 463405, at *4 & n. 8 (Aug. 26, 1994), *aff'd,* 60 F.3d 815, 1995 WL 392372 (3d Cir.1995) (Table). In the instant case, plaintiff does not allege that he requested a hearing, and, in fact, he admitted that he did not "recall anybody ever saying to me I would have been denied a hearing. I think I cancelled anything that might have happened by finally resigning. Strictly to put it in plain English, I didn't want to be bothered with them anymore." *See* Pl.'s Dep. at 134. Like the plaintiff in *Freeman* who made no request to refute the purportedly defamatory accusation to clear his name, "plaintiff cannot successfully contend that he was denied due process." 795 F.Supp. at 739. Accordingly, summary judgment in favor of the County defendants on plaintiff's § 1983 claim is warranted.

B. *Plaintiff's Claim under State Law.*

Plaintiff also asserts a defamation claim against the County defendants and defendant Buffer based on the content of three articles plaintiff identified in his amended complaint. *See* Pl.'s Am. Compl. ¶¶ 16–18.

This court's jurisdiction to hear this claim is based upon 28 U.S.C. § 1332 in that this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. The parties do not dispute that Pennsylvania law applies.

■ Plaintiff's claim of defamation against the County defendants fails because plaintiff has directed this court to no evidence in the record establishing that the County defendants actually made any of the statements contained in the articles that he alleges to be defamatory. *See* 42 Pa. Con. Stat. Ann. § 8343(a) (West 1998) (to prevail on defamation claim, plaintiff must prove, among other things, publication by defendant).

■ With respect to defendant Buffer, a reading of the three articles and the committee's report upon which the articles were based, as well as plaintiff's deposition testimony, conclusively establishes that the articles constituted a fair report of the committee's findings and thus are protected by a qualified privilege.[12] In other words, the "gist" of the articles is substantially the same as the content of the committee's report. *See Sciandra v. Lynett,* 187 A.2d 586, 589 (Pa.1963) (discussing fair report privilege and stating that it is not essential that official report be set forth verbatim by newspaper; rather "[a] summary of substantial accuracy is all that is required"); *see also Medico v. Time, Inc.,* 643 F.Supp. 134, 137–38 (3d Cir.1981). Further, plaintiff has failed to produce any evidence establishing that defendant Buffer abused that privilege. *See Medico,* 643

**11.** Plaintiff claims, without any supporting evidence, that defendants' actions "have probably canceled out any future employment in Corrections or any future employment in the Lehigh Valley." Pl.'s Resp. to County Defs.' Mot. for Summ. J. at 4. Plaintiff, however, resigned his position and has not submitted any evidence that he was precluded from any other job in the area. Thus, plaintiff's injury to his reputation alone, without any change in status, does not state a cause of action under the liberty interest of the Due Process Clause.

*See Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

**12.** Moreover, to the extent plaintiff claims that one of the articles is defamatory because it contains a statement that plaintiff was forced to resign, that claim is belied by plaintiff's current, although legally incorrect, stance in this litigation, i.e., that he was constructively discharged by the County defendants.

F.2d at 146. Accordingly, summary judgment on plaintiff's defamation claim is also appropriate.

## IV. CONCLUSION

For the reasons stated, the County defendants' and defendant Buffer's motions for summary judgment will be granted and judgment shall be entered in favor of defendants and against plaintiff on all claims.