# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donna Davis Javitz,  :
                Appellant  :
   :
           v.  :    No. 115 C.D. 2020
   :    Argued:  April 12, 2021
Luzerne County, Robert Lawton,  :
and David Parsnik  :
   :

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                  **HONORABLE PATRICIA A. McCULLOUGH,** Judge (P.)
                  **HONORABLE ANNE E. COVEY,** Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**               **FILED:  July 19, 2021**

Donna Davis Javitz (Appellant) appeals the December 18, 2019 Order of the Court of Common Pleas of Luzerne County (common pleas) granting Luzerne County (County), Robert Lawton, and David Parsnik's (collectively, Appellees) Motion for Summary Judgment (Motion) and dismissing Appellant's Second Amended Complaint (Amended Complaint) with prejudice.  In the Amended Complaint, Appellant asserted a claim under Section 3 of the Whistleblower Law, 43 P.S. § 1423,[1] a breach of contract claim based on violations of the County's Ethics Code,[2] and a common law claim for wrongful termination in violation of public

---

[1] Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. § 1423.

[2] Luzerne County, Pa., Accountability, Conduct, and Ethics Code (2012).  The Ethics Code is found on pages 5a-27a of the Reproduced Record.

policy. On appeal, Appellant argues that common pleas erred in granting summary judgment as to her Whistleblower Law claim, her Ethics Code violation claim, and her common law claim for wrongful termination in violation of public policy. After review, we affirm.

## I. BACKGROUND

The following facts are undisputed unless specifically noted otherwise.[3] County hired Appellant as Director of Human Resources on August 4, 2014, and she worked in this position until October 26, 2015. Parsnik served as the Director of Administrative Services for the County and was Appellant's direct supervisor. Lawton was the County Manager at the time. Appellant's job duties as Director of Human Resources included negotiating contracts, handling employee complaints, responding to grievances, conducting investigatory and *Loudermill*[4] hearings with regard to employee disciplinary matters, (Amended Complaint ¶ 48), attending meetings, and dealing with union matters. Appellant's office at the time she was hired was in the County Courthouse in the managers' suite of offices, which was in close proximity to Lawton's office. (*Id.* ¶¶ 66, 67.)

As a part of her job duties, Appellant participated in two investigatory meetings involving the American Federation of State, County, and Municipal

---

[3] Appellant's claims were set forth in her Amended Complaint filed in the District Court for the Middle District of Pennsylvania, and the District Court found the facts to be undisputed unless otherwise indicated. *Javitz v. Luzerne County*, No. 3:15-CV-2443, 2018 WL 1545589, at *1 (M.D. Pa. Mar. 29, 2018). This opinion can be found at pages 92a-103a of the Reproduced Record. Common pleas relied on the District Court's recitation of the facts in issuing its order and opinion. We do the same, and all facts are from the District Court's opinion unless otherwise noted.

[4] "A *Loudermill* hearing is a pre-termination hearing given to a public employee that is required by due process, as established in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 . . . (1985)." *Ray v. Brookville Area Sch. Dist.*, 19 A.3d 29, 31 n.2 (Pa. Cmwlth. 2011).

Employees (AFSCME). During these meetings, County employee and AFSCME president Paula Schnelly (Schnelly) was present as an AFSCME union representative for the union members employed by the County being investigated. Schnelly worked for the County in the District Attorney's Office as an administrative assistant, and her job duties were limited to the handling of appellate matters. In March 2015, AFSCME filed an unfair labor practice charge against the County in regard to the investigation Appellant conducted that included one of the investigatory meetings that Schnelly attended. The unfair labor practice charge included a document that appeared to Appellant to be a verbatim transcript of the above meeting. (*See* Reproduced Record (R.R.) at 164a-70a.) Appellant, noting that Schnelly had not been taking consistent notes at the meetings but did have her phone on the table in front of her with her hands folded in front of her, believed that this transcript was the result of Schnelly's illegal recording of the meeting without the consent of those present. (*Id.* at 131a-32a.) Appellees dispute that Schnelly recorded the meeting and that Appellant has produced sufficient evidence to support that Schnelly did so. Further, while Appellant asserts that Schnelly participated in the meeting in her role as a county employee, Appellees maintain that she participated in the meeting solely as an AFSCME representative.

Appellant brought her concern regarding the potential recording to Parsnik, who agreed that the transcript may have resulted from an illegal recording. Appellant and Parsnik then met with the County's District Attorney, who stated that she would be referring the matter to the Pennsylvania Office of the Attorney General due to a conflict of interest. Appellant alleges that Lawton then intervened and instructed the District Attorney to not investigate the issue, (Amended Complaint ¶ 76), though Appellees and the District Attorney deny that Lawton did so,

3

(Affidavit of Luzerne County District Attorney ¶ 5; Supplemental Reproduced Record (S.R.R.) at 553b).

Over the following months, Appellant repeatedly asked Parsnik and the County Solicitor about the status of the investigation and also inquired with the District Attorney, but she received no response. (Amended Complaint ¶¶ 83-84.) Appellant claims that after reporting the incident to the District Attorney and following up regarding the investigation's status, she began to suffer retaliatory actions. For instance, Appellant avers that Parsnik informed her that her office was going to be moved from the County Courthouse to another building. (*Id.* ¶ 66.) Appellant further submits that Parsnik denied her access to the Human Resources budget, blocked her ability to use budgeted monies to hire or compensate staff, restricted her access to the filing cabinet containing personnel information and required her to submit permission requests for such access, took over all contract negotiations and union meetings and excluded her from such without consulting Appellant, began to provide Appellant's subordinate employees with work assignments that were previously her responsibility, gave Appellant tasks that were not previously a part of her job responsibility, and generally acted in a rude manner towards Appellant. (*Id.* ¶¶ 68-69, 72-74, 77-80.) Finally, Appellant alleges she was eliminated from budgetary and union meetings, including subsequent AFSCME meetings with Schnelly. Appellees deny that many of these actions took place, such as Appellant being restricted from contract negotiations and union meetings, and that, to the extent that any of these actions did occur, they were not retaliatory in nature.

On October 15, 2015, AFSCME and the County settled the unfair labor practices charge. On October 26, 2015, Parsnik and the County Solicitor held a

4

meeting with Appellant at which they informed Appellant that she would no longer be employed by the County. Appellant refused to resign and requested a *Loudermill* hearing, which was not provided. Appellant avers that no reason was given for her termination and that her work performance was not at issue until she brought her allegations. (Appellant's Affidavit ¶ 34, R.R. at 251a.) Appellees maintain that Appellant's termination was due to her: conduct towards unions; refusal to follow through with hiring a Human Resources Business Partner; failure to initiate policies, procedures, and initiatives as directed; and handling of issues with the employment application for a candidate for an assistant public defender position. (Appellees' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ¶ 70, S.R.R. at 466b.)

On December 21, 2015, Appellant filed an initial complaint in the District Court for the Middle District of Pennsylvania (District Court), which was followed by the Amended Complaint at issue here. Appellant brought claims pursuant to 42 U.S.C. § 1983 for violations of procedural due process under the Fourteenth Amendment[5] and the First Amendment[6] to the United States Constitution and the present state law claims, which included one claim for violation of the Whistleblower Law, one breach of contract claim for violation of the County's Personnel Code, Home Rule Charter, and Ethics Code, and one common law claim for wrongful termination in violation of public policy brought in the same Court as her Whistleblower Law claim. Appellees filed a motion for summary judgment, and

---

[5] U.S. CONST. amend. XIV, § 1 (stating, in pertinent part, that no state shall "deprive any person of life, liberty, or property, without due process of law").

[6] U.S. CONST. amend. I ("Congress shall make no law . . . abridging the freedom of speech."). Appellant brought a First Amendment retaliation claim, which requires a "public employee plaintiff [to] allege that h[er] activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009).

5

the District Court granted the motion as to Appellant's procedural due process claim and First Amendment claim but declined to exercise supplemental jurisdiction over Appellant's state law claims. *Javitz v. Luzerne County*, No. 3:15-CV-2443, 2018 WL 1545589, at \*12 (M.D. Pa. March 29, 2018) (*Javitz II*).[7]

Following the District Court's refusal to exercise supplemental jurisdiction over her state law claims, Appellant filed a praecipe seeking the transfer of her state law claims from the District Court to common pleas pursuant to Section 5103(b)(1) of the Judicial Code, 42 Pa.C.S. § 5103(b)(1).[8] Appellees filed a motion to transfer the state law claims to Luzerne County, which were ultimately transferred to common pleas.

On March 13, 2019, Appellees filed their Motion with regard to Appellant's breach of contract claims under the County Personnel Code, Home Rule Charter, and Ethics Code, and Whistleblower Law claim. Appellees argued in their Motion that Appellant's breach of contract claim fails because she was an at-will, exempt employee with no property interest and that her Whistleblower Law claim lacks merit because there was no wrongdoing by any County employee since Schnelly was acting in her role as AFSCME president and Appellant was not fired for reporting the alleged wrongdoing. In support of their Motion, Appellees submitted the

---

[7] Appellant appealed to the United States Court of Appeals for the Third Circuit, which affirmed the dismissal of Appellant's due process claim but reversed and remanded with regard to Appellant's First Amendment claim. *Javitz v. County of Luzerne*, 940 F.3d 858, 867 (3d Cir. 2019).

[8] Section 5103(b)(1) provides, in pertinent part, that

[w]here a matter is filed in any United States court for a district embracing any part of this Commonwealth and the matter is dismissed by the United States court for lack of jurisdiction, any litigant in the matter filed may transfer the matter to a court or magisterial district of this Commonwealth.

42 Pa.C.S. § 5103(b)(1).

following evidence for the purpose of refuting Appellant's claims that she was retaliated against for filing a report of wrongdoing and showing that Appellant was terminated for reasons unrelated to the report. First, Appellees provided the deposition of Shelby Watchille, a Luzerne County Human Resources employee, who indicated that her office also moved away from the County Courthouse around the same time as Appellant along with the entirety of the County's Human Resources Department. (S.R.R. at 307b.) Next, Appellees point to the deposition of Necia Gazdziak, another Luzerne County Human Resources employee, who indicated that Appellant made her feel uncomfortable by "trying to make [her] say something that was[ no]t true" and that Appellant "continually asked [her] for the whole time that [Appellant was] there . . . who [she] knew to get hired" with regard to the vacant Human Resources Business Partner position. (*Id.* at 310b.) Gazdziak further testified that she also participated in the move from the County Courthouse around the same time as Appellant's office was moved, affirming that the entire Human Resources Department was moved, and stating that Appellant had been aware of the potential for a move from the County Courthouse when Appellant interviewed Gazdziak in October 2014. (*Id.*) Next, with regard to Appellant's claim that she was restricted from involvement in budget and union meetings and contract negotiations, Appellees provided emails reflecting Appellant's involvement with such meetings after her report of alleged wrongdoing in March 2015. (*See id.* at 313b-31b, 353b-63b, 362b-428b.) To demonstrate one of the reasons for Appellant's termination, that Appellant had been directed to hire a Human Resources Business Partner, a position that had not been filled at the time of Appellant's termination, Appellees provided the email chain documenting Parsnik's instructions for such hire to Appellant. (*See id.* at 339b-52b.) Finally, Appellees point to the

7

transcripts of the meetings at issue and the unfair labor practice complaint to show Appellant's unfavorable handling of union matters as another reason for her termination. (*Id.* at 244b-88b.)

In opposition to the Motion, Appellant provided the deposition of the District Attorney, who stated that she referred the issue to the Attorney General due to the conflict of interest stemming from Schnelly's employment with her office. (R.R. at 240a-41a.) She also submitted her own affidavit, in which she stated that she "had no prior discipline before her termination," that "[s]he was not warned,[]given a warning,[]suspended[, or] given a last chance agreement," and that she was "just told to pack up and get out shortly after the unfair labor practice complaint . . . was settled." (Appellant's Affidavit ¶ 34, R.R. at 251a.) Finally, Appellant pointed to Schnelly's deposition, in which a note-taking exercise was performed in order to gauge "whether she had the kind of note-taking ability" that would explain the verbatim transcript submitted in the unfair labor practice complaint. (R.R. at 272a, 275a-88a.)

After argument, common pleas granted the Motion, entered judgment in favor of Appellees with regard to all claims in Appellant's Amended Complaint, and dismissed Appellant's complaint with prejudice. In its accompanying opinion, common pleas determined that Appellees were "entitled to Summary Judg[]ment on [Appellant's] breach of contract claim and[,] regardless, [Appellant's] claim is precluded by collateral estoppel." (Common Pleas' December 18, 2019 Opinion (Op.) at 4; R.R. at 354a.) Common pleas adopted the District Court's finding that "'based on the unambiguous terms of the offer of employment that [Appellant] signed, [Appellant] is an at-will, exempt service employee' and 'nothing in the [Luzerne County] Home Rule Charter and Personnel Code prevents [Appellant]

8

from being classified' as such." (*Id*. at 5; R.R. at 355a (quoting *Javitz II*, 2018 WL 1545589, at *6-8).) Moreover, common pleas held that Appellant was collaterally estopped from bringing her breach of contract claim because all four elements of the test under *Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998), were met. Specifically, common pleas found that: (1) Appellant's breach of contract claim under the Home Rule Charter and Personnel Code was decided in *Javitz II*; (2) the action reached final judgment upon the Third Circuit's affirmation of *Javitz II*, from which no appeal was filed; (3) Appellant and Appellees were parties to that action; and (4) Appellant and Appellees had a full and fair opportunity to litigate the issue in that action. Therefore, common pleas declined to disagree with the District Court's holding on that issue and determined that Appellant was precluded from raising this issue.

With respect to Appellant's Whistleblower Law claim, common pleas found that "the record fails to support a prima facie case for [Appellant's] claim," as common pleas determined that it was "undisputed from the record that [] Schnelly attended the meetings as the AFSCME union representative, not on behalf of the County." (*Id*. at 356a-57a.) Common pleas determined that because Schnelly's job duties as an administrative assistant only included working on appeals, "Schnelly had no reason to attend union meetings on behalf of the County." (*Id*. at 357a.) Further, common pleas held that Appellant "only made bald assertions that [] Schnelly transcribed the meetings . . . and failed to provide any evidence that [] Schnelly recorded the meetings." (*Id*.) Finally, because "the record clearly shows that [Appellant] was not terminated for any reporting of wrongdoing or waste, but for issues dealing with work performance, specifically her handling of matters

9

involving labor unions[,]" common pleas held that Appellant failed to establish a prima facie case for a Whistleblower Law claim. (*Id.*)

After Appellant filed her Statement of Errors Complained of on Appeal, common pleas issued its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) (Rule 1925(a) Op.). In this opinion, common pleas expanded on its reasons for granting the Motion, relying on *Gray v. Hafer*, 651 A.2d 221, 224 (Pa. Cmwlth. 1994), for its definition of "wrongdoing" under the Whistleblower Law and in finding that the alleged wrongdoing could not be attributed to Appellees. Common pleas explained that Appellees "were not responsible for any of [] Schnelly's alleged conduct at the union meetings as she attended as a union representative," not on behalf of Appellees, especially since Schnelly's job responsibilities primarily include the preparation of "briefs, motions, and orders for appellate appeals[.]" (Rule 1925(a) Op. at 7, 9; R.R. at 385a, 387a.) Common pleas also added that Appellant "failed to show any wrongdoing attributable to" Appellees. (Rule 1925(a) Op. at 11; R.R. at 389a.) Rather, common pleas explained that her

> termination apparently was the result of her unsatisfactory work performance. Specifically, [Appellant's] conduct toward county unions; her refusal to hire a Human Resources Business Partner; her failure to initiate policies, procedures and directed initiatives; and her handling of issues with an employment application for a candidate for an assistant public defender position; and had nothing to do with her report of alleged recording.

(Rule 1925(a) Op. at 10; R.R. at 388a.)

Common pleas then addressed Appellant's wrongful termination in violation of public policy claim for the first time, as it neglected to do so in its earlier opinion. Common pleas reasoned that Appellant could not avail herself of the public policy exception to the general rule that a common law cause of action for wrongful

termination is not available in Pennsylvania for an at-will employee. Because Appellant failed to establish a cause of action under the Whistleblower Law and to identify any other relevant statutes or legal precedent indicating that the alleged retaliation violates public policy, and as Appellees had separate, plausible reasons for terminating her at-will employment, common pleas explained that summary judgment was appropriate as to this claim.

Finally, common pleas explained that although Appellant "did not dispute [] [its] ruling on the Violation of Legislative Enactment claims for the [P]ersonnel [C]ode and [H]ome [R]ule [C]harter in her Statement of Errors Complained of on Appeal[, its] December 18, 2019 Summary Judgment Opinion is sufficient to justify summary judgment" on these claims. (Rule 1925(a) Op. at 13; R.R. at 391a.) Further, as common pleas did not address Appellant's claim for violation of the County's Ethics Code in its earlier opinion, the court found that the "County's 'whistle[]blowing' policy parallels that of the Whistleblow[er Law]," and, therefore, common pleas analyzed the claim in the same fashion. (Rule 1925(a) Op. at 14; R.R. at 392a.) Accordingly, because it found that Schnelly was not acting in her role as a County employee but as an AFSCME representative, common pleas determined that Appellant "did not report a 'wrongdoing' attributable to [Appellees] that they are charged to enforce, as the alleged recordings of the union meetings were not taken by, nor could they be attributed to, any of [Appellees] or their employees." (*Id.*) And, moreover, common pleas explained that Appellant did "not present sufficient evidence to establish a causal connection between her March 2015 report and her termination[] seven months later." (*Id.*) For these reasons, common pleas

11

reaffirmed that Appellees were entitled to summary judgment. Appellant now appeals to this Court.[9]

## II. DISCUSSION

A motion for "[s]ummary judgment is properly granted where there is no genuine issue of material fact as to a necessary element of a cause of action and the moving party has clearly established entitlement to judgment as a matter of law." *LaChance v. Michael Baker Corp.*, 869 A.2d 1054, 1056 n.3 (Pa. Cmwlth. 2005). For the purposes of summary judgment, "[a] fact is material only if it directly affects the disposition of the case." *Pyeritz v. Commonwealth*, 956 A.2d 1075, 1079 (Pa. Cmwlth. 2008) (citing *Allen v. Colautti*, 417 A.2d 1303 (Pa. Cmwlth. 1980)). "All doubts as to the existence of a genuine issue of a material fact are to be resolved against the granting of summary judgment." *Shoats v. Commissioner, Pa. Dep't of Corr.*, 591 A.2d 326, 330 (Pa. Cmwlth. 1991) (citing *Penn Ctr. House, Inc. v. Hoffman*, 553 A.2d 900 (Pa. 1989)). "[T]he questions of whether there are material facts in issue and whether the moving party is entitled to summary judgment are matters of law." *Alderwoods (Pa.), Inc. v. Duquesne Light Co.*, 106 A.3d 27, 34 n.5 (Pa. 2014).

### A. Whistleblower Law

Appellant first alleges that common pleas erred in granting summary judgment as to her Whistleblower Law claim. Specifically, Appellant asserts that common pleas erred in ruling on three of the required elements for a wrongful

---

[9] "This Court's review of a trial court's order granting or denying a motion for summary judgment is limited to determining whether the trial court committed an abuse of discretion or an error of law." *Sacco v. Township of Butler*, 863 A.2d 611, 613 (Pa. Cmwlth. 2004).

12

discharge claim under the Whistleblower Law, which Appellant posits requires her to prove the following: (1) an employee (2) who was discharged (3) because (4) she made a good faith report (5) to her employer (6) of an instance of wrongdoing (7) by a public body. *See* Section 3 of the Whistleblower Law, 43 P.S. § 1423. Appellant submits that common pleas erroneously decided that: no wrongdoing occurred because there was no evidence that Schnelly actually recorded the meeting; even if wrongdoing occurred, it did not involve Appellees because Schnelly was acting as an AFSCME representative, not a County employee; and Appellant was not fired because of the report of wrongdoing but for performance-related reasons.

Section 3(a) of the Whistleblower Law provides, in pertinent part:

> **(a) Persons not to be discharged.--**No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee . . . makes a good faith report . . . to the employer or appropriate authority [of] an instance of wrongdoing or waste by a public body[.]

43 P.S. § 1423(a). The "Whistleblower Law protects employees who come forth with good faith reports of wrongdoing by publicly[ ]funded employers; it does so by prohibiting retaliatory conduct from the employer, and by providing a civil remedy for employees when employers violate the law's provisions." *Harrison v. Health Network Lab'ys Ltd. P'ships*, 232 A.3d 674, 681 (Pa. 2020) (citing *Bailets v. Pa. Tpk. Comm'n*, 181 A.3d 324, 333 (Pa. 2018)).

Section 4(b) of the Whistleblower Law states the requirements that a plaintiff must satisfy to establish a prima facie case of a violation thereof, and provides, in pertinent part:

> **(b) Necessary showing of evidence.--**An employee alleging a violation of this act must show by a preponderance of the evidence that, prior to

the alleged reprisal, the employee . . . had reported . . . in good faith . . . an instance of wrongdoing or waste to the employer or an appropriate authority.

43 P.S. § 1424(b). Where a plaintiff makes this showing, the burden shifts to the employer to prove its actions were lawful under Section 4(c) of the Whistleblower Law, which states that "[i]t shall be a defense to an action under this section if the defendant proves by a preponderance of the evidence that the action by the employer occurred for separate and legitimate reasons, which are not merely pretextual." 43 P.S. § 1424(c). Thus, to establish a prima facie case for wrongful discharge under the Whistleblower Law, "the plaintiff must show both a protected report of wrongdoing or waste and a causal connection between that report and the discharge." *Evans v. Thomas Jefferson Univ.*, 81 A.3d 1062, 1064 (Pa. Cmwlth. 2013) (citing *O'Rourke II v. Commonwealth*, 778 A.2d 1194, 1200 (Pa. 2001)); *Golaschevsky v. Dep't of Env't Prot.*, 720 A.2d 757, 758-59 (Pa. 1998); *Gray*, 651 A.2d at 225. Therefore, **all** of the following must be shown to establish a prima facie case: (1) a protected report of wrongdoing, (2) by a public body, and (3) causal connection between the report and her termination.

In this case, we must determine whether common pleas erred in holding that, as a matter of law, Appellant has not established **all three** elements necessary to establish the prima facie case. We conclude that common pleas did not err as Appellant has not provided sufficient evidence to show a causal connection between her report and her termination under the standard set forth by our Supreme Court. Because she has not established the causal connection, we begin with this element of the analysis.

Appellant argues that summary judgment was improperly granted on her Whistleblower Law claim because there is a dispute of material fact surrounding the

14

cause of her discharge. Appellant claims she was discharged in retaliation for her report of wrongdoing, and, contrarily, Appellees claim she was discharged for legitimate non-retaliatory reasons. Appellant thus asserts "that key facts concerning the connection between [] [Appellant's] report of wrongdoing and her termination are disputed and are based almost exclusively on oral testimony that conflicts." (Appellant's Br. at 38.) The fact that there is no "smoking gun" regarding her termination is of no moment, Appellant maintains, because this is the case in most retaliation cases where causation evidence is often circumstantial. (*Id.* at 39-40.) Accordingly, Appellant argues that common pleas improperly determined that the causal connection was not met by making credibility determinations as to the reasons behind Appellant's termination, which is inappropriate at this stage of the proceedings.

Appellees submit that Appellant has failed to provide sufficient evidence to show the causal connection between her termination and her report of the alleged wrongdoing, as required by our Supreme Court. Appellees contend that the evidence Appellant cited in response to the Motion is insufficient to show such causal connection and, therefore, she did not meet her burden of proving a prima facie case.

As stated by our Supreme Court, the causal connection required for a Whistleblower Law claim must be shown "by concrete facts or surrounding circumstances that the report of wrongdoing or waste led to plaintiff's dismissal, such that **there was specific direction or information received not to file the report** or that **there would be adverse consequences because the report was filed**." *Golaschevsky*, 720 A.2d at 759 (quoting *Gray*, 651 A.2d at 225) (alterations omitted) (emphasis added). "'Vague and inconclusive circumstantial evidence' is insufficient to satisfy that threshold burden to show a causal connection and shift the

15

burden to the defendant to justify its actions." *Evans*, 81 A.3d at 1070 (quoting *Golaschevsky*, 720 A.2d at 759) (internal quotations omitted). Moreover, "the mere fact that [a] discharge occurred a few months after a report of wrongdoing and that the first formal negative actions by the employer occurred after the report are **not** enough to show a causal connection." *Id.* at 1070-71 (emphasis in original).

For instance, in *Golaschevsky*, the employee claimed "that his report of alleged wrongdoing touched off a series of retaliatory actions," including negative performance evaluations, lack of cooperation from fellow employees and supervisors, withholding of information regarding computer software that was related to his work duties, and, ultimately, termination. 720 A.2d at 759-60. The Supreme Court explained that the employee's perception of his treatment was not sufficient to show the necessary causal connection and, therefore, that the employee failed to establish a prima facie case. Subsequently, this Court, in *Evans*, 81 A.3d at 1070-71, found that the employee there, who had submitted evidence similar to that submitted in *Golaschevsky* regarding his treatment following his report of alleged wrongdoing, had not submitted evidence sufficient to establish a prima facie case of causation under *Golaschevsky*.

In reviewing the record, we are constrained to agree with Appellees that the record is devoid of specific and concrete facts showing that Appellant's termination in October 2015 resulted from the March 2015 report of Schnelly's alleged recording. Appellant has not provided "concrete facts" or shown any "surrounding circumstances" that could lead to the conclusion that there was "a specific direction" that she would suffer retaliation or be terminated because of the report as required by precedent. *Golaschevsky*, 720 A.2d at 761. Nor is there any evidence or allegation that she was directed to not make the report; in fact, Appellant provided

16

evidence that Parsnik, her supervisor **joined her when she made her report** to the District Attorney. Instead, the evidence Appellant points to – the positive performance evaluations she had received prior to the report, the moving of her office from the County Courthouse, her alleged restriction in involvement in union meetings and contract negotiations, the alleged changes in delegation of responsibilities, what Appellant perceived as rude behavior by her supervisors, and her ultimate termination – are **nearly identical** to the claimed retaliatory actions alleged by the employees in *Golaschevsky* and *Evans*, which were determined to be **insufficient** to establish a prima facie case on causation. Thus, under Supreme Court and our Court's precedent, these perceived retaliatory acts amount only to Appellant's subjective perception that these actions resulted from her report of alleged wrongdoing and do not rise to the sort of concrete facts required to show causation under the Whistleblower Law.

Accordingly, common pleas did not err in concluding that Appellant failed to establish a prima facie case of a Whistleblower Law violation by Appellees. Therefore, the burden never shifted to Appellees to provide a separate and legitimate reason for Appellant's termination, and summary judgment was properly entered as to this claim.

## B. The County's Ethics Code

Appellant next argues that common pleas erred in granting summary judgment on her County Ethics Code claim because the court erroneously read the Ethics Code as being identical to the Whistleblower Law and there are material facts in dispute concerning this claim. Because the Ethics Code provides that no covered County employee may be fired for making a good faith report of wrongdoing,

17

Appellant asserts that she is entitled to this protection. Therefore, Appellant argues that common pleas' "unsupported assertion that the Ethics Code whistleblower provision analysis is identical to that of the Whistleblower Law" was improper because "the Ethics Code whistleblower provision is more expansive than the Whistleblower Law, encompassing any wrongdoing by an employee." (Appellant's Br. at 43.) Because common pleas erroneously applied the same standard as under the Whistleblower Law and also made credibility determinations as to the allegations surrounding whether the County fired Appellant for making the report, Appellant argues that summary judgment was improper.[10]

The whistleblower provision found in Section 103.05(P) of the Ethics Code provides:

1. Every Covered Person is encouraged to disclose any information which he or she believes evidences a violation of any law, rule or regulation.

2. Every Covered Person is encouraged to disclose any information which he or she believes evidences a clear misuse or waste of County funds, or an abuse of official authority, or which can result in a substantial and specific danger to the public's health or safety.

3. No Covered Person shall be penalized for, nor take any action to punish another, for whistle[]blowing. No County Officer or appointee may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste. No County Officer or appointee may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the

---

[10] Appellees did not present arguments in response to Appellant's arguments on this issue.

employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

4. Every Covered Person is encouraged to expose corruption wherever discovered.

County Ethics Code § 103.05(P), (R.R. at 15a). Section 102(G) of the Ethics Code defines "Covered Persons" as "all employees of the County, all members and employees of County authorities, boards, and commissions, all elective County officials and all employees in their offices, and all employees of the Judiciary office and Office of Court Administration," which includes Appellant during her employment with the County as Director of Human Resources. (*Id.* at 9a.)

For comparison, Section 3(a), (b) of the Whistleblower Law provides, in pertinent part:

> **(a) Persons not to be discharged.--**No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body . . . .

> **(b) Discrimination prohibited.--**No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

43 P.S. § 1423(a), (b).

Common pleas analyzed this claim in its 1925(a) Opinion by applying the same analysis for Whistleblower Law claims, reasoning that the Ethics Code's whistleblower provision in Section 103.05(P) mirrored the Whistleblower Law.

19

Reviewing the language of the two provisions, it appears that the Ethics Code's whistleblower provision in Section 103.05(P)(2) and (3) borrows almost verbatim from the language in the Whistleblower Law's provisions in Section 3(a) and (b), respectively, with the only alterations being the change from "employee" to "Covered Persons" and "employer" to "County Officer." To the extent that Appellant argues the Ethics Code may cover more types of wrongdoing by a government employee than does the Whistleblower Law, the preamble and stated purpose of the Ethics Code provide, respectively, that its provisions were aimed at the actions of covered persons **in their public offices or employment** and that it was adopted to be "consistent with all applicable laws of the Commonwealth of Pennsylvania." (Sections 101.01 and 101.02 of the Ethics Code; R.R. at 8a.) Thus, the claims of wrongdoing under the Ethics Code must relate to the public office or performance of public employment. As such, we agree with common pleas that the Ethics Code's whistleblower provision was designed to be coextensive with the Whistleblower Law in its coverage and purpose. Accordingly, as explained above, because Appellant cannot establish causation in order to state a prima facie claim under the Whistleblower Law, Appellant's claim under the Ethics Code's whistleblower provision is likewise without merit, and summary judgement was properly entered as to this claim.

### C. *Wrongful Discharge in Violation of Public Policy*

Appellant last argues that common pleas erred in granting summary judgment on her alternative common law claim for wrongful discharge in violation of public policy. Appellant argues that, if this Court finds she lacks a statutory remedy under the Whistleblower Law, she still has a common law claim for wrongful discharge in

20

violation of public policy and common pleas erred in granting summary judgment on this claim. Appellant posits that her dismissal "violates the public policy that encourages government employees to report waste or wrongdoing that they witness on the job," which the County "itself has enshrined . . . in its Ethics Code." (Appellant's Br. at 45.) As common pleas dismissed this claim because it had already decided that the Whistleblower Law claim should be dismissed, Appellant asserts that this common law action should be available and that common pleas erred by dismissing it.[11]

Common pleas found that Appellant failed to allege a violation of public policy and that there existed separate, plausible, and legitimate reasons for her termination that did not pertain to the report of alleged wrongdoing. In Pennsylvania the "general rule [is that] there is no common law cause of action against an employer for termination of an at-will employment relationship." *Clay v. Advanced Comput. Applications*, 559 A.2d 917, 918 (Pa. 1989) (citing *Geary v. U.S. Steel Corp.*, 319 A.2d 174 (Pa. 1974)). Pennsylvania recognizes a cause of action for wrongful discharge when an important, well-recognized public policy is implicated. *Id*. at 918. Our Supreme Court has cautioned, however, that "such a claim could be brought in Pennsylvania under **very narrow circumstances**." *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009) (emphasis added).[12] Further, even where "an

---

[11] Appellees did not present arguments in response to Appellant's arguments on this issue.

[12] Our courts have found instances in which violations of public policy will support wrongful termination claims. *See Raykovitz v. K Mart Corp.*, 665 A.2d 833 (Pa. Super. 1995) (employee wrongfully discharged for filing an unemployment compensation claim); *Kroen v. Bedway Sec. Agency, Inc.*, 633 A.2d 628 (Pa. Super. 1993) (termination for refusal to take a polygraph test as a condition of continuation of employment); *Field v. Phila. Elec. Co.*, 565 A.2d 1170 (Pa. Super. 1989) (employee, hired as expert in nuclear safety, discharged for making statutorily required report to Nuclear Regulatory Commission); *Hunter v. Port Auth. of Allegheny Cnty.*, 419 A.2d 631 (Pa. Super. 1980) (denial of public employment to pardoned individual
**(Footnote continued on next page…)**

21

important public policy is involved, an employer may discharge an employee where there exists a separate, plausible, and legitimate reason for doing so." *Cisco v. United Parcel Servs., Inc.*, 476 A.2d 1340, 1343 (Pa. Super. 1984). Thus, where there exists "a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against [her] employer for wrongful discharge." *Geary*, 319 A.2d at 184-85.

However, where a statutory remedy exists that provides coverage for a certain claim, case law indicates that a common law claim for wrongful determination is not available. *See Clay*, 559 A.2d at 920. In *Clay*, the Supreme Court analyzed the Pennsylvania Human Relations Act (PHRA)[13] in relation to a common law claim for wrongful termination. The Court determined that, because the PHRA provided a statutory remedy for discriminatory termination of an employee, a common law claim could not stand, based on allegations that were squarely within the PHRA. 559 A.2d at 921. The United States District Court for the Eastern District of

---

because of assault conviction, which had no relevance to fitness for job, violated the public policy embodied in article I, section 1 of Pennsylvania Constitution, PA. CONST. art. I, § 1, interpreted to guarantee an individual's right to engage in any of the common occupations); *Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119 (Pa. Super. 1978) (interference with at-will employee's duty to serve on jury, a duty expressly protected by statute).

Conversely, the Superior Court has not permitted a common law wrongful discharge claim where no clear mandate of public policy is implicated. *See McCartney v. Meadowview Manor, Inc.*, 508 A.2d 1254 (Pa. Super. 1986) (employee of a nursing home discharged because she applied to the state for a license to run a competing facility); *Rossi v. Pa. State Univ.*, 489 A.2d 828 (Pa. Super. 1985) (employee discharged for attempting to curtail the misuse of public tax revenues); *Cisco v. United Parcel Servs., Inc.*, 476 A.2d 1340 (Pa. Super. 1984) (employee discharged after being wrongly accused and subsequently acquitted of criminal conduct in connection with his employment).

While not binding, Superior Court decisions "offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[13] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963.

22

Pennsylvania later applied a similar reasoning to the Whistleblower Law. The District Court explained that because the plaintiff "ha[d] an appropriate statutory remedy under the Whistleblower [Law]," and as the General Assembly "clearly appears to have enacted that law to protect the interest of employees and society in circumstances such as those alleged by plaintiff," the plaintiff could not also maintain a common law claim for wrongful discharge. *Freeman v. McKellar*, 795 F. Supp. 733, 742 (E.D. Pa. 1992) ("A cause of action for wrongful discharge . . . may be maintained only in the absence of a statutory remedy for an aggrieved employee.");[14] *see also Macken v. Lord Corp.*, 585 A.2d 1106, 1109 (Pa. Super. 1991). Likewise, in *Macken*, the Superior Court analyzed the Workmen's (now Workers') Compensation Act (WCA) and held that because Section 413(b) of the WCA, 77 P.S. § 774.1,[15] provided the sole remedy for the claimed violation of the WCA, there was no public policy violation upon which the appellant could base a common law wrongful discharge claim.

We discern no reason to not apply the Supreme Court's reasoning in *Clay* to the Whistleblower Law with regard to a common law claim for wrongful discharge. This conclusion is supported by the persuasive reasoning of the District Court in *Freeman* and the Superior Court in *Macken*, which similarly held, respectively, that common law wrongful discharge claims could not be made where a statutory remedy exists under the Whistleblower Law and WCA. Accordingly, where a claim is properly brought under the Whistleblower Law, a common law claim for wrongful discharge will not sound.

---

[14] While not binding, decisions from the federal district and circuit courts may be cited for their persuasive value. *Edinger v. Borough of Portland*, 119 A.3d 1111, 1115 (Pa. Cmwlth. 2015).

[15] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 3 of the Act of February 8, 1972.

In the present case, Appellant alleges a violation of public policy on the basis that the Whistleblower Law creates a public policy of protecting government employees from retaliatory discharge as a result of reports of wrongdoing or waste. Indeed, the language of the Whistleblower Law indicates as much, and the same was determined in *Krajsa v. Keypunch, Inc.*, 622 A.2d 355, 360 (Pa. Super. 1993) (holding that the Whistleblower Law is to protect governmental employees but does not create a public policy in favor of employees discharged from non-governmental entities.) However, because the Whistleblower Law provides the statutory remedy for Appellant's claim, she cannot also bring a common law claim for wrongful termination in violation of public policy. *See Clay*, 559 A.2d at 920; *Macken*, 585 A.2d at 1109; *Freeman*, 795 F. Supp. at 742. Therefore, summary judgment was properly entered as to this claim.

## III. CONCLUSION

For the foregoing reasons, we find no error in common pleas' granting of summary judgment as to Appellant's Whistleblower Law claim, Ethics Code violation claim, and common law wrongful termination in violation of public policy claim, and in dismissing Appellant's Amended Complaint on these bases. Therefore, we affirm.

---

**RENÉE COHN JUBELIRER,** Judge

24

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donna Davis Javitz,              :
                Appellant    :
                         :
            v.           :    No. 115 C.D. 2020
                         :
Luzerne County, Robert Lawton,  :
and David Parsnik          :
                         :

## O R D E R

**NOW**, July 19, 2021, the Order of the Court of Common Pleas of Luzerne County granting Luzerne County, Robert Lawton, and David Parsnik's Motion for Summary Judgment and dismissing Donna Davis Javitz's Second Amended Complaint is **AFFIRMED**.

 

                                        _____

                                         **RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donna Davis Javitz,                           :
                        Appellant             :
                                              :   No.  115 C.D. 2020
              v.                              :
                                              :   Argued:  April 12, 2021
Luzerne County, Robert Lawton,                :
and David Parsnik                             :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge (P.)
           HONORABLE ANNE E. COVEY, Judge


**_OPINION NOT REPORTED_**

DISSENTING OPINION
BY JUDGE McCULLOUGH                              FILED:  July 19, 2021


              Section 3(a) of the Whistleblower Law[1] states, in relevant part, that
"[n]o employer may discharge . . . an employee . . . because the employee . . . makes
a good faith report . . . to the employer or appropriate authority [of] an instance of
wrongdoing or waste[.]"  43 P.S. §1423(a).  Our Supreme Court has held that "the
Whistleblower Law's provisions must be liberally construed to effect their salutary
remedial object, *i.e.*, the protection of whistleblowers."  *Harrison v. Health Network
Laboratories Limited Partnerships*, 232 A.3d 674, 681 (Pa. 2020).

              In this case, I respectfully disagree with the thoughtful analysis and
conclusion of the Majority that Donna Davis Javitz (Appellant) failed to adduce
sufficient evidence that a causal connection existed between her report of

---

[1] Act of December 12, 1986, P.L. 1559, *as amended,* 43 P.S. §§1421-1428.

wrongdoing and discharge from employment as the Director of Human Resources (Director) of Luzerne County (County).

Viewed in the light most favorable to Appellant, the evidence demonstrates that as part of her job duties as Director, Appellant handled and dealt with union matters. In accordance with those duties, Appellant participated in two investigatory meetings involving a County union and later discovered (or, at least, had a good faith basis to believe) that, during one of those meetings, the union's president, Paula Schnelly (Schnelly), illegally recorded the meeting in violation of the Wiretapping and Electronic Surveillance Control Act (Wiretap Act),[2] which is criminal conduct that is graded as a felony of the third degree. *See* 18 Pa.C.S. §5703. In March 2015, Appellant reported the suspected wrongdoing to her direct supervisor, David Parsnik (Parsnik), who agreed that the meeting may have been unlawfully recorded. Together, they reported the incident to the District Attorney (DA), who indicated that she would refer the matter to the Office of the Attorney General due to a conflict of interest. However, the County Manager, Robert Lawton (Lawton), intervened and instructed the DA to "drop it" and not investigate or pursue the matter any further. Subsequently, Appellant inquired into the status of the investigation with Lawton, the County Solicitor, and the DA, on multiple occasions, but was effectively shunned at every step of the way. Appellant then began to experience adverse, retaliatory employment actions in an apparent attempt to "squeeze" her out. Specifically, the County omitted Appellant from work discussions and instead went directly to her subordinates; Appellant was not included in talks with human resources consultants and vendors; her access key to the filing room with the personnel files was confiscated; Appellant was no longer

---

[2] 18 Pa.C.S. §§5701-5782.

allowed to lead contract negotiations and was instructed, for the first time, to do the filing for the office; and Appellant was no longer included in office meetings or allowed to provide her input on the human resources budget. Shortly thereafter, in October 2015, Appellant was told to resign and, when she refused, the County terminated her. Notably, Appellant was given no reason for her termination at the time of her discharge. (Reproduced Record (R.R.) at 92a-94a, 210a-34a, 329a-36a.)

Relying predominately on *Golaschevsky v. Department of Environmental Protection*, 720 A.2d 757 (Pa. 1998), the Majority concludes that the Court of Common Pleas of Luzerne County (trial court) did not err in granting summary judgment against Appellant on her claim under the Whistleblower Law because "Appellant has not provided sufficient evidence to show a causal connection between her report and her termination." *Javitz v. Luzerne County* (Pa. Cmwlth., No. 115 C.D. 2020, filed July 19, 2021) (unreported), slip op. at 14. However, *Golaschevsky* is factually inapposite because, in that case, the employer submitted the plaintiff's performance evaluations into evidence, and the plaintiff's "termination apparently was the result of his unsatisfactory work performance[] and had nothing to do with his report." 720 A.2d at 760. Further, "rather than punishing [the plaintiff] for making an oral report of alleged wrongdoing, [the plaintiff's] supervisors encouraged him to follow up on the matter and produce a written report, though he apparently never did so." *Id.*

Here, by contrast, the County has not submitted evidence demonstrating that Appellant had a history of unsatisfactory work performance prior to making her report. Appellant conveyed the perceived wrongdoing to Parsnik and, although Parsnik supported her and the matter was reported to the DA, Lawton put an end to an investigation into the wrongdoing. On numerous occasions, Appellant followed up on the report and asked about the status of the investigation, no one

responded, and, after declining a request to resign, she was fired without a stated reason for the discharge. (R.R. at 332a.) In the meantime, Appellant was subjected to a pattern of antagonistic and retaliatory actions, specifically with respect to her job duties and role as Director. In reviewing this same factual predicate, the United States District Court for the Middle District of Pennsylvania concluded, with respect to Appellant's Whistleblower Law claim, that Appellant's "allegations [were] sufficient to plead that her report to her employer is casually connected to her termination." *Javitz v. Luzerne County* (M.D. Pa., No. 3:15-CV-2443, filed March 31, 2017) (unreported), slip op. at __; 2017 U.S. Dist. Lexis 49650, at **29-30 (*Javitz I*).[3]

In *Javitz I*, the federal district court reviewed the averments in Appellant's amended complaint to determine whether her claims for retaliation under the First Amendment to the United States Constitution[4] and Pennsylvania's Whistleblower Law could withstand the County's motion to dismiss. In rejecting the County's arguments that Appellant did not allege sufficient facts to establish a causal connection between her report of wrongdoing and termination, the federal district court explained:

> [The County] argue[s] that [Appellant] has failed to allege enough facts about how the report of wrongdoing was causally connected with her termination. To establish a causal connection "a plaintiff must 'show by concrete facts or surrounding circumstances that the report [of wrongdoing or waste] led to [the plaintiff's] dismissal,

---

[3] In subsequent proceedings, the federal district court dismissed Appellant's claims based on federal law and declined to exercise supplemental jurisdiction over Appellant's state law claims, including her Whistleblower Law claim. *See Javitz v. Luzerne County* (M.D. Pa., No. 3:15-CV-2443, filed March 29, 2018) (unreported), slip op. at __; 2018 U.S. Dist. Lexis 54035, at **33-34.

[4] U.S. Const. amend. I.

such as that there was specific direction or information received not to file the report or [that] there would be adverse consequences because the report was filed.'" *Golaschevsky*, 720 A.2d at 759 (alterations original) (quoting *Gray v. Hafer*, 651 A.2d 221, 225 (Pa. Cmwlth. 1994)); *see also O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (Pa. 2001) ("[A] Whistleblower Law claimant must come forward with some evidence of a connection between the report of wrongdoing and the alleged retaliatory acts.").

The Court has already discussed the factual allegations in [Appellant's] [a]mended [c]omplaint that adequately pleaded a causal connection between her report to the [DA] and her termination with respect to [Appellant's] First Amendment retaliation claim.

*Javitz I*, slip op. at __; 2017 U.S. Dist. Lexis 49650, at **28-29 (some internal citations omitted). As stated earlier in the federal district court's opinion, those allegations were as follows:

[Appellant] has alleged that after making the report to the [DA], (1) her supervisor stopped including her in work discussions and instead went directly to her subordinates, (2) she was removed from talks with human resources consultants and vendors, (3) her key to the filing room with the personnel files was taken away, (4) she was no longer allowed to lead contract negotiations, (5) she was, for the first time, told to do the filing for the office, (6) she was no longer included in meetings, (7) her supervisor became extremely disrespectful to her in front of her staff, and (8) she was no longer allowed input on the human resources budget. In addition, [Appellant] was never given a reason for her termination.

*Id.*, slip op. at __; 2017 U.S. Dist. Lexis 49650, at **22-23 (internal citations omitted).

The federal district court then continued:

Because [Appellant] has pleaded that the report to the [DA] occurred contemporaneously with her report to her

employer, the factual allegations that provide support for her First Amendment claim provide support for her Whistleblower Law claim. In addition, [Appellant] has pleaded that [] Lawson expressed that he did not want the [DA] to pursue the investigation and that [] Parsnik refused to discuss the investigation when [Appellant] inquired about it on subsequent occasions. At this [] stage, [Appellant's] allegations are sufficient to plead that her report to her employer is casually connected to her termination.

*Id.*, slip op. at __; 2017 U.S. Dist. Lexis 49650, at **29-30 (internal citations omitted).[5]

I wholeheartedly agree with this federal district court's conclusion in *Javitz I* and believe that it applies here with equal and compelling force.

In arriving at a different result, the Majority seemingly determines that Appellant failed to establish causation because she did not prove that the County directly threatened her with adverse employment action for filing a report or specifically directed her not to file the report.[6] However, in my view, such an

---

[5] Parenthetically, the federal district court noted that, within the Third Circuit, "[t]here seems to be some conflict in the case law about the relationship between the causal connection requirement under the Whistleblower Law and the causal connection requirement in the First Amendment retaliation context." *Id.*, slip op. at __; 2017 U.S. Dist. Lexis 49650, at *30 n.5. Nonetheless, the federal district court concluded that, even if there was "a more stringent standard" for whistleblower claims, Appellant "has alleged enough facts in her Whistleblower claim to plead a plausible claim for relief." *Id.*

[6] According to the Majority,

the record is devoid of specific and concrete facts showing that Appellant's termination in October 2015 resulted from the March 2015 report of Schnelly's alleged recording. Appellant has not provided "concrete facts" or shown any "surrounding circumstances" that could lead to the conclusion that there was "a specific direction" that she would suffer retaliation or be terminated because of the report. *Golaschevsky*, 720 A.2d at 761. Nor is there any evidence or allegation that she was directed to not make the

**(Footnote continued on next page…)**

onerous burden has the effect of defeating the underlying purpose of the Whistleblower Law to protect employees who report governmental wrongdoing. *See Harrison*, 232 A.3d at 681; *O'Rourke*, 778 A.2d at 1202 ("The Whistleblower Law is . . . chiefly a remedial measure intended to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing. In enacting the statute, the General Assembly aimed to effectuate such design by ensuring that employees are not discouraged from reporting violations of legal or ethical codes."). I doubt that it was the intention of our General Assembly to allow an employer to subvert the Whistleblower Law and retaliate against an employee just because the retaliation was ordered from someone up in the chain-of-command, and the employer did not directly threaten the employee with adverse employment repercussions as a result of the report and/or instructed the employee not to file a report. If an employer can escape liability simply by not issuing an overt or thinly veiled threat to the employee for seeking to file a report, then there is no real reason or incentive for a whistleblower to blow the whistle, unless her or she wants to be out of a job.

By their very nature, retaliation claims almost never result in a plaintiff producing evidence in the form of a "smoking gun" or a "thick cloud of smoke." *See, e.g.*, *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464-65 (2d Cir. 1989) ("In assessing the inferences to be drawn from the circumstances of the termination, the court must be alert to the fact that '[e]mployers are rarely so cooperative as to include a notation in the personnel file' that the firing is for a reason

---

report; in fact, Appellant provided evidence that Parsnik joined her when making her report to the [DA].

*Id.*, slip op. at 16 (emphasis omitted).

expressly forbidden by law.") (internal citation omitted); *cf. Aman v. Cort Furniture Rental Corporation*, 85 F.3d 1074, 1082 (3d Cir. 1996) ("[W]hile discriminatory conduct persists, violators have learned not to leave the proverbial 'smoking gun' behind. As one court has recognized, '[d]efendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it.'") (internal citation omitted). Consequently, in retaliation cases and other cases where the employer's motive for discharging an employer is at issue, the causation inquiry is usually (if not always) based on an assessment of the totality of the circumstances. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) (First Amendment retaliation) (stating that a plaintiff may establish causation from the "evidence gleaned from the record as a whole," including with circumstantial evidence of a pattern of antagonism following the protected conduct); *see also Uber v. Slippery Rock University of Pennsylvania*, 887 A.2d 362, 368 (Pa. Cmwlth. 2005) (age discrimination) ("[C]ausation may be inferred where circumstantial evidence suggests a 'pattern of antagonism' following the protected conduct. However, these factors are not dispositive of causation but, rather, represent relevant inquiries in light of the totality of the circumstances.") (internal citations omitted); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990) (sex discrimination) ("A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.").

Indeed, in *Golaschevsky*, it appears that our Supreme Court endorsed such a causation standard when it stated that a plaintiff need only "show by concrete facts or surrounding circumstances that the report led to [her] dismissal." 720 A.2d at 761. Years later, in *O'Rourke*, our Supreme Court discussed at length the burden-shifting framework in whistleblower cases between the plaintiff and the employer,

and stated that, in order to make out a *prima facie* case on the causation element, the plaintiff "must come forward with some evidence of a connection between the report of wrongdoing and the alleged retaliatory acts." *Id.* at 1200. In these cases, however, our Supreme Court never said, or much less suggested, that in order to prove causation, a plaintiff must absolutely demonstrate *either* that the employer directly threatened him *or* her with adverse employment action for filing a report of wrongdoing or specifically directed him or her not to file such a report. To the contrary, our Supreme Court has indicated that these are two illustrative and non-exhaustive ways through which causation could be shown.[7] As a result, and consistent with the case law in the retaliatory and discrimination contexts, I would apply a totality of the circumstances test as part of the causation standard for claims arising under the Whistleblower Law.

Applying a totality of the circumstances test here, I believe that, given the unique facts surrounding and leading to Appellant's discharge, Appellant has satisfied her burden of proof with respect to causation. In short, Appellant made a report of wrongdoing; the County directed the DA not to investigate the matter; Appellant inquired into the investigation on a variety of occasions and never received a response; in the meantime, Appellant experienced antagonistic behavior and retaliatory actions from higher-ranking employees of the County regarding her

---

[7] *See Golaschevsky*, 720 A.2d at 761 (stating that a plaintiff can show causation "by concrete facts or surrounding circumstances that the report led to [the plaintiff's] dismissal, *such as* that there was specific direction or information received not to file the report or [that] there would be adverse consequences because the report was filed") (emphasis added); *see also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (stating that the "terms 'including' and 'such as' . . . indicate the illustrative and not limitative function of the examples given"); *Clinical Research Institute v. Kemper Insurance Company*, 84 P.3d 147, 152 (Or. Ct. App. 2004) ("Indeed, the phrase 'such as' is indicative of a nonexclusive list of *examples*.") (emphasis in original); *United States v. Technic Services, Inc.*, 314 F.3d 1031, 1045 (9th Cir. 2002) ("The use of the phrase 'such as' implies that the ensuing list is not exhaustive, but is only illustrative.").

job duties and role as Director; and, finally, after she refused to resign, Appellant was discharged without a reason.

Hence, I respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge